# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-00696-RGK (SSx) | Date | April 28, 2014 |
|---|---|---|---|
| Title | *THOMAS ALTHOUSE v. WARNER BROS. ENTERTAINMENT et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |
|---|---|

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order re: Defendants' Motion for Summary Judgment (DE 32)

## I. INTRODUCTION

On January 31, 2013, Thomas Althouse ("Plaintiff") filed a complaint in this Court against Warner Bros. Entertainment, Inc. ("WBEI"), Andy Wachowski, Lana Wachowski, and Joel Silver ("Silver") (collectively, "Defendants"). On July 12, 2013, Plaintiff filed a Second Amended Complaint ("SAC") alleging claims for: (1) Declaratory Judgment; (2) Direct Copyright Infringement; and (3) Contributory Copyright Infringement. All claims arise out of Defendants' production of the series of films known as "The Matrix Trilogy."

On February 24, 2014, Defendants filed a Motion for Summary Judgment on Plaintiff's claims. On March 11, Plaintiff filed a Rule 56(d) Opposition, and, on March 13, Plaintiff filed an Ex Parte Application to Amend the Court's Scheduling Order. The Court granted in part Plaintiff's Ex Parte Application, extending the Opposition due date to March 26, the Reply due date to April 2, and the Discovery Cut-off date to April 2. On March 26, Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment. On March 27, Plaintiff filed an Amended Opposition to Defendants' Motion for Summary Judgment. The Court then filed an order striking both of Plaintiff's Oppositions, the first for exceeding the 20 page limit and lacking a table of contents, and the second for exceeding the 20 page limit. On March 28, Plaintiff refiled the Amended Opposition, and the Court filed another Order striking it again for exceeding the 20 page limit. On March 31, Plaintiff filed an Ex Parte Application to Exceed the Page Limitation, and refiled the Amended Opposition. The Court denied Plaintiff's application.

For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## II.     FACTUAL BACKGROUND

Plaintiff alleges that in 1992 he began writing a screenplay entitled *The Immortals*. *The Immortals* follows a present-day CIA agent, Jim Reece, who is provided a drug that makes him immortal. Jim eventually finds himself in the year 2235 AD, attempting to spoil the plot of Adolf Hitler's son, Wagner, and a party of immortal Nazis, who intend to wipe out the entire population of "Short-lifers," those who are not immortal. Plaintiff alleges that on or about June 25, 1993, he submitted the screenplay to WBEI through an attorney. Plaintiff alleges that Defendant Silver, whose production company was located on the WBEI lot, retrieved the screenplay through a WBEI database and provided it to the Wachowskis. Plaintiff alleges that the Wachowskis then infringed his screenplay developing The Matrix Trilogy.

Defendants allege that Andy and Lana Wachowski began working on The Matrix Trilogy in 1992 and completed a first draft of scripts for all three films by 1993. The Matrix Trilogy follows Neo, who learns that the present-day world is actually a virtual reality known as "the matrix." The real world is overrun by machines who harvest humans' energy while keeping their minds imprisoned in the "matrix." When a group of rebels frees Neo in the real world, he learns that he has been chosen to defeat the machines and free the humans. *The Matrix*, the first film in the trilogy, was released in 1999, crediting the Wachowsksis as directors, writers, and executive producers, and Silver as a producer. After the first film's success, WBEI financed and distributed *The Matrix Reloaded* in May 2003 and *The Matrix Revolutions* in November 2003.

## III.    JUDICIAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party needs to show only that there is an absence of evidence to support the non-moving party's case. *Id.*

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(c). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324.

## IV.     DISCUSSION

Defendants argue that the Court should grant summary judgment on Plaintiff's copyright infringement claims. The Court agrees.

Plaintiff submitted his Opposition to Defendants' Motion for Summary Judgment four times, and all four times, the Court ordered the Opposition to be stricken for failure to comply with the Local Rules. Under Local Rule 7-12, the Court may deem Plaintiff's failure to comply with the Local Rules as consent to the granting of the Motion. C.D. Cal. R. 7-12. However, even if the Court were to consider the Amended Opposition, the Court would still conclude that no substantial similarities exist between Plaintiff's and Defendants' works as a matter of law.

To successfully establish a copyright infringement claim, a plaintiff must establish (1) ownership of the copyrights, (2) the defendant's access to the copyrighted works, and (3) substantial similarity between the copyrighted works and the allegedly infringing material. *Berkic v. Chrichton*, 761 F.2d 1289, 1291-92 (9th Cir. 1985). Although substantial similarity involves a fact-specific inquiry, the question may be decided as a matter of law. *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010). The Ninth Circuit has frequently affirmed summary judgment decisions in favor of copyright defendants on the issue of substantial similarity. *Id.* (citing *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990)).

It is well established that "[c]opyright law only protects expression of ideas, not the ideas themselves." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002) (citing 17 U.S.C. § 102(b)). In determining whether a defendant has engaged in permissible lifting of an idea or impermissible copying of an expression, courts have developed a two-part extrinsic/intrinsic test. *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006). The extrinsic analysis is objective and based on "specific criteria which can be listed and analyzed." *Id.* This test "requires a comparison of plot, theme, dialogue, mood, setting, pace, and sequence." *Berkic*, 761 F.2d at 1293 (internal citations omitted). Infringement exists when the "*protectible elements, standing alone,* are substantially similar."*Cavalier*, 297 F.3d at 822 (citation omitted) (emphasis in original). "Therefore, when applying the extrinsic test, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination." *Id.* The intrinsic analysis is subjective and focuses on whether a reasonable person would find the work substantially similar. *Funky Films, Inc.*, 462 F.3d at 1077. In a motion for summary judgment, courts apply only the extrinsic test, leaving the intrinsic test to the trier of fact. *Id.* Summary judgment is appropriate where the court finds that plaintiff has not satisfied the extrinsic test by showing that the protectible elements are substantially similar. *Id.*

In the SAC, Plaintiff lists a total of 118 alleged similarities between *The Immortals* and The Matrix Trilogy. However, all of Plaintiff's examples are either too general for copyright protection, are *scenes a faire*, or are commonly used, unoriginal ideas. Thus, none of Plaintiff's 118 alleged similarities creates a triable issue of fact. *See Cavalier*, 297 F.3d at 823 ("Familiar stock scenes and themes that are staples of literature are not protected.") ("[*Scenes a faire*], or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement."). Examining the protectible details in the two works, no jury could reasonably conclude that *The Immortals* has substantially similar expressions of ideas to The Matrix Trilogy.

### A. Plot

The only similarity in plot is that both stories portray a protagonist attempting to prevent a dominant group from oppressing and annihilating a subservient group. However, the extrinsic test "looks beyond the vague, abstracted idea of a general plot and instead focuses on the objective details of the works." *Berkic*, 761 F.2d at 1293. Looking at the details of the plot, which are potentially protectible, the Court finds no substantial similarities. In *The Immortals*, Hitler and the Nazis are cryogenically frozen and then reanimated at a time when their cohorts have successfully created an immortality drug. The protagonist, Jim, must fight the now-immortal Nazis who seek to oppress and destroy all "Short-lifers." In contrast, in The Matrix Trilogy, machines harvest humans' energy while trapping their minds in a virtual reality known as the "matrix." The protagonist, Neo, seeks to free humans from enslavement by the machines and protect a group of rebels who live freely in the real world. The basic premises of The Matrix Trilogy and *The Immortals* are so different that it would be unreasonable to find their plots substantially similar.

### B. Characters

Turning to the works' characters, the Court finds no substantial similarity for any protectible expression. In the SAC, Plaintiff alleges a number of general similarities. For instance, Jim and Neo both attempt to free people from their situation (SAC 9); both characters have nightmares of their significant other dying (SAC 12); and both characters have an enemy who they hate (SAC 11). These are all standard elements, commonly found in films and literature. None of these characterizations are protected by copyright law. After examining the alleged similarities between the works' characters, the Court finds no protectible features that overlap between the works.

### C. Themes

Although Plaintiff alleges similarities in themes between *The Immortals* and The Matrix Trilogy, copyright law does not protect any of the aspects alleged to be similar. For example, Plaintiff alleges that both stories have allusions to Christ. (SAC 32.) However, allusions to Christianity in literature date back hundreds of years and are not generally protectible. Looking at the details of the works, the two works express these themes very differently. The Christian allusions in *The Immortals* concludes with the literal Second Coming of Christ, whereas The Matrix Trilogy concludes with a metaphorical reference to Christ, as Neo sacrifices himself to save others. Even Plaintiff's more specific allegations regarding thematic similarity, like renewal of the world following the Christ-figures' actions (SAC 30), are *scenes a faire* elements and not entitled to copyright protection. Overall, the Court finds no substantially similar and protectible thematic elements between the works.

### D. Dialogue

For a court to find substantial similarity in dialogue between two works, the Plaintiff must demonstrate "extended similarity of dialogue." *Olson v. National Broad. Co., Inc.*, 855 F.2d 1446, 1450 (9th Cir. 1988). The Court does not find any substantially similar portions of dialogue between the two works, let alone any "extended similarity."

### E. Setting

Although both works are science-fiction stories that take place both in the present day and in the future, the works share no protectible expressions of setting. The Matrix Trilogy shifts back and forth between the virtual reality "matrix," which looks like the present day, and some time around 2199 AD, where the world is in ruins and the only free humans dwell in a subterranean, rebel city called Zion. In contrast, *The Immortals* begins in the present day and shifts to 2235 AD Washington D.C. Although the "Short-lifers'" city in *The Immortals* is also partially in ruins, there the ruins are recognizable landmarks and the action takes place above ground. By contrast, the ruins in The Matrix Trilogy do not contain recognizable landmarks and the action takes place below ground. Many science fiction movies are set in a futuristic society with ruins, and this general setting is not protectible. Plaintiff points to more specific similarities in the setting such as: the fact that characters in The Matrix Trilogy have a jack in the back of their necks and characters in *The Immortals* have "enhancers" in their necks (SAC 8); the blue electric plasma that the machines emit in *The Immortals* and the blue lighting that emits from certain weapons in The Matrix Trilogy (SAC 25); and the use of flying transports in both works (SAC 25-26). However, these features can be traced back to films like *Star Wars* and *Terminator*, and are neither original nor protectible.

### F. Mood, Pace, and Sequence

The mood, pace, and sequence of the two works also do not share any protectible elements. For example, although both works are fast-paced action films, The Matrix Trilogy includes high-speed car chases and physics-defying martial arts, neither of which are found in *The Immortals*.

The Court does not find it necessary to continue an exhaustive list of dissimilarities between the two films. The Court has read *The Immortals* and viewed all three films of The Matrix Trilogy. The Court finds no substantial similarity as to any protectible element of plot, characters, theme, dialogue, mood, setting, pace, or sequence. Even if Plaintiff could prove that Defendants had access to *The Immortals* script, no reasonable jury could possibly conclude that The Matrix Trilogy is substantially similar to *The Immortals* in any of these categories. As a result, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's copyright infringement claims and finds that The Matrix Trilogy does not infringe *The Immortals*.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                                **Initials of Preparer**